**IN THE COURT OF APPEALS OF IOWA**

No. 25-0247
Filed April 23, 2025

**IN THE INTEREST OF J.S.,**
**Minor Child,**

**J.S., Father,**
        Appellant.

_____

        Appeal from the Iowa District Court for Polk County, Erik I. Howe, Judge.


        A father appeals the termination of his parental rights.  **AFFIRMED.**


        Nancy L. Pietz, Des Moines, for appellant father.

        Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney

General, for appellee State.

        Megil D. Patterson, Youth Law Center, Des Moines, attorney and guardian

ad litem for minor child.


        Considered without oral argument by Schumacher, P.J., and Buller and

Sandy, JJ.

**BULLER, Judge.**

A father appeals the termination of his parental rights to one of his children. He challenges the grounds for termination, claims termination was not in the child's best interests, and urges an exception to termination. We affirm.

**Background Facts and Proceedings.** Pursuant to a 2017 Arizona custody order, the father had physical care of the child, born in 2013. The mother lived in Iowa. Around 2018, the father and child, as well as the father's older child, moved to Iowa. In October 2022, the older child reported drug paraphernalia in the home and found a pipe in her jacket at school. The school reported this to the Iowa Department of Health and Human Services (HHS). And the father admitted to methamphetamine use the weekend before at a party and displayed paranoid thoughts during interactions with HHS. Both children were removed from the father's care; the child at issue here was placed in the mother's custody, and the older half-sibling was placed with a relative. The father's rights as to the older sibling are not at issue in this appeal.

In November, the father completed a substance-abuse evaluation, which recommended outpatient treatment and mental-health therapy. At first, he attended therapy and treatment. But then he tested positive for methamphetamine in January 2023. A few months later, the father was hospitalized and reportedly had methamphetamine in his system; once discharged, his engagement with social workers decreased, he stopped attending substance-abuse treatment and therapy, and he did not complete requested drug tests. At the few visits they had, the father would "nod[] off" or act inappropriately around the child—like calling him "brainwashed." By late summer, the father was largely disengaged from the child

and HHS, and the only encounter with the child ended with police intervention. In late spring 2024, the father texted the mother to ask for a visit; a visit in June was the last time he saw the child that calendar year. The father also reached out to HHS one time, but HHS was unable to reach him in response. The father tried to call the child on the child's birthday and Christmas, but the child did not want to talk to him.

The permanency goal eventually was changed from reunification to transfer of sole physical custody to the mother. Because the custodial order was from a different state and the father did not cooperate, efforts to transfer custody by bridge order were unsuccessful. The permanency recommendation was changed to termination of the father's rights.

At the termination trial, the father blamed the termination proceedings on "bad things that the State does." He claimed he had not used illegal substances and was only asked three times to drug test, with the first one "falsely positive." He did not think he had any ongoing requirements because everything "was done before the first court date." He also seemed confused about visitation supervision and did not seem to think he bore any responsibility for arranging visits. He claimed to be in online therapy but could not name the program and gave conflicting answers about what participation looked like. When asked what outcome he wanted at the termination trial, the father threatened to file kidnapping charges against the mother and was inconsistent or incoherent on whether he wanted his rights terminated. He also seemed to be convinced a bridge order was already in place, giving custody to the mother.

The State, HHS, the mother, and the child's guardian ad litem all recommended termination of the father's parental rights. The juvenile court terminated the father's parental rights under Iowa Code section 232.116(1)(e), (f), and (*l*) (2024). The father appeals, and we review de novo. *See In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021).

**Statutory Elements.** Although the father challenges the statutory elements under all three grounds, we need find only one supported by the record to affirm. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We focus our review on paragraph (e), which requires the court find:

> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (2) The child has been removed from the physical custody of the child's parents for a period of at least six consecutive months.
> (3) There is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so. For the purposes of this subparagraph, "significant and meaningful contact" includes but is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent. This affirmative duty, in addition to financial obligations, requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and requires that the parents establish and maintain a place of importance in the child's life.

Iowa Code § 232.116(1)(e). The father challenges the final element, asserting brief visitation and phone calls were enough to maintain contact, arguing he "was not given the opportunity to resume care" of the child, and complaining the mother did not "foster the relationship" between father and child.

We agree with the juvenile court that this ground for termination was proven. At the time of the termination trial, the father had not seen the child for more than

six months and had made no request of the mother to do so. While he attempted birthday and Christmas phone calls, the child did not want to speak with him. The father disengaged from all treatment in mid-2023 and made no effort to engage with HHS or comply with any case plan recommendations in the eighteen months between then and the termination trial. We find clear and convincing evidence that the father has not maintained significant and meaningful contact with the child and made no efforts to resume care of the child, satisfying this statutory ground for termination.

**Best Interests.** The father also claims termination is not in the child's best interests, urging there was no evidence the mother's husband would adopt the child and the child's therapist did not testify that it was in the child's best interests. When we consider the best-interests prong of our termination framework, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). The juvenile court noted the ongoing safety concerns, the father's lack of participation in services demonstrating "an inability or unwillingness to make necessary changes to have his child placed in his care," and the child's need for a committed and supportive parent. Considering all the father's behaviors and lack of effort to establish himself as a safe caregiver for the child, coupled with his insistence the child should be returned to him anyway, we agree termination of his parental rights is in the child's best interests. And, of course, the State was not required to put on evidence the mother's new husband wished to adopt or that the therapist had formed an opinion as to this element of the termination framework.

**Permissive Exception.** Finally, the father urges the court need not terminate his parental rights because the mother has legal custody, so the juvenile court should enter a bridge order to resolve the custody dispute. *See id.* § 232.116(3)(a). The father had the burden to establish the exception to termination. *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018). Early in 2024, the juvenile court attempted a permanency goal of "a modification of custody order" to "transfer . . . sole physical custody to [the] mother." But no progress was made on modifying the Arizona custodial order. And the mother and the child (then eleven years old) supported termination of the father's parental rights. *Cf.* Iowa Code § 232.116(3)(b) (establishing an exception to termination where the child is over ten years old and objects, recognizing a child's preference can be taken into consideration in certain instances). The father did not carry his burden to establish an exception to termination. *See A.S.*, 906 N.W.2d at 476.

**AFFIRMED.**